**Edward WALDRON, Plaintiff,**

v.

**Robert H. FINCH, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 1153.**

United States District Court
S. D. West Virginia,
Bluefield Division.

Jan. 9, 1970.

P. W. Hendricks, Madison, W. Va., for plaintiff.

Wade H. Ballard, III, U. S. Atty., Bluefield, W. Va., George D. Beter, Asst. U. S. Atty., Huntington, W. Va., for defendant.

CHRISTIE, District Judge:

This is an action under Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare. A decision by a hearing examiner on May 16, 1969, became the final decision of the Secretary on June 30, 1969, when it was affirmed by the Appeals Council. The final decision holds, *inter alia*, that an overpayment of social security disability benefits had been made to plaintiff in the amount of $1010.40, that recovery of that overpayment would not defeat the purpose of Title II of the Act, or be against equity and good conscience, and that such recovery, therefore, may not be waived. The matter is before the Court on the defendant's motion, under Rule 56(b), for summary judgment.

The complaint in this case is wholly inadequate. It alleges facts that are totally unrelated to the instant case, and evidently the Secretary's failure to move for its summary dismissal is premised upon his understanding of the humanitarian goals of the Social Security Act. Since we, also, conceive this to be the ultimate purpose of the Act, we hesitate to dismiss the complaint on our own motion for fear of frustrating the true purpose of the legislation on the technical rules of pleading. However, we find the magnitude of the inadequacy of the complaint filed in this case both dismaying and disturbing.

The facts disclosed by the record in this case reveal that plaintiff was severely injured by a slate fall in a coal mine. As a result of his injuries, the Social Security Administration, in August 1966, determined that he was disabled within

the meaning of the Act.[1] Plaintiff was awarded a $49.00 monthly disability benefit. On January 5, 1967, the Social Security Administration informed him that his benefits were being withheld while he was receiving workmen's compensation benefits. By letter dated January 17, 1967, referring to the January 5, 1967 letter, plaintiff wrote the administration and related that while he was receiving workmen's compensation benefits, it was his understanding that he was still entitled to his social security disability benefit. (At the hearing it was developed that another person actually wrote the letter for plaintiff). By letter dated the same day, January 17, 1967, the administration restated their original position. Subsequent to this letter exchange, the administration, on February 20, 1967, directed one of its employees to explain to the plaintiff the reasons why he could not receive both benefits simultaneously. On this date, the plaintiff signed the following statement:

"The workmen's compensation offset has been explained to me. I understand fully and feel that the determination in my case was correct."

However, several months later, in June 1967, the administration was informed that plaintiff's workmen's compensation benefits had been terminated. (From what source they received this information the record does not reveal, but the administration does not allege or infer that they received it or that they were caused to receive it in any way from the acts of the plaintiff). On August 30, 1967, the administration informed plaintiff that he would begin receiving his

$49.00 monthly disability benefit as of July 1967, and that the check would be in the amount of $618.40, which would represent payment through August 1967, and after that he would receive the regular monthly payment of $49.00. Upon discovery of its error, the administration, on November 30, 1967, wrote plaintiff a letter over the signature of C. C. Hall, Assistant Director, Bureau of Disability Insurance, advising him that he had been overpaid some $490.00, and that this overpayment would be withheld from future benefits. Then, by letter dated March 27, 1968, the plaintiff was advised that the recovery of the $490.00 overpayment would not be made at that time, and that the benefits withheld from him since December 1967 would be resumed, also, that he would receive a check for $153.40, which represented payments through February 1968, and that he would, thereafter, receive a monthly disability benefit check in the amount of $55.40.

Incredible as it may seem, the bureaucratic history of this case continues. On April 1, 1968, plaintiff was requested to fill out a document at the administration's district office at Welch, West Virginia, entitled a "Refund Questionnaire." On this questionnaire, plaintiff truthfully listed that he received $168.00 monthly benefits from workmen's compensation. On the following day, April 2, 1968, plaintiff, again at the district office, completed another form document, this one entitled " 'Without Fault' Questionnaire." He was asked to give the reasons why he *thought* he was entitled to this payment. We think his response is significant: "I filed for social security and thought I was due the money." After

1. The term "disability" is defined in Sections 216(i) and 223 of the Social Security Act, as amended, to mean: "(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

The 1968 Amendments to the Act imposed the additional requirement that "(A) an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives or whether a specific job vacancy exists for him. or whether he would be hired if he applied for work."

receiving this information, the Administration, on April 23, 1968, suspended further payments. Plaintiff filed a request for reconsideration and on June 7, 1968, the administration notified plaintiff that the repayment of the overpaid benefits could not be waived in his case because the administration was of the opinion that he had not been "without fault" in receiving the overpayment.

The plaintiff was informed, in December 1968, that he had been overpaid by an additional amount of $539.60. This amount was said to represent overpayments made from June 1967 through April 1968, and plaintiff was requested to repay the total amount of $1010.40. He appealed this decision and a hearing was held on May 5, 1969, at which time the hearing examiner upheld the administrative determination.

The Secretary urges us to affirm his assessment of the case upon the provisions of Section 224 of the Social Security Act, 42 U.S.C.A. § 424a,[2] Section 204 of the Social Security Act, 42 U.S.C.A. § 404,[3] and upon the authority of the reg-

**2.** Section 224 of the Social Security Act, 42 U.S.C.A. Section 424a, as amended, July 30, 1965 and January 2, 1968, provides:

"(a) If for any month prior to the month in which an individual attains the age of 62—

"(1) such individual is entitled to benefits under section 223, and

"(2) such individual is entitled for such month, under a workmen's compensation law or plan of the United States or a State, to periodic benefits for a total or partial disability (whether or not permanent), and the Secretary has, in a prior month, received notice of such entitlement for such month, the total of his benefits under section 223 for such month and of any benefits under section 202 for such month based on his wages and self-employment income will be reduced (but not below zero) by the amount by which the sum of—

"(3) such total of benefits under sections 223 and 202 for such month, and

"(4) such periodic benefits payable (and actually paid) for such month to such individual under the workmen's compensation law or plan, exceeds the higher of—

"(5) 80 percentum of his 'average current earnings', or

"(6) the total of such individual's disability insurance benefits under section 223 for such month and of any monthly insurance benefits under section 202 for such month based on his wages and self-employment income, prior to reduction under this section.

In no case shall the reduction in the total of such benefits under sections 223 and 202 for a month (in a continuous period of months) reduce such total below the sum of—

"(7) the total of the benefits under sections 223 and 202, after reduction under this section, with respect to all persons entitled to benefits on the basis of such individual's wages and self-employment income for such month which were determined for such individual and such persons for the first month for which reduction under this section was made (or which would have been so determined if all of them had been so entitled in such first month), and

"(8) any increase in such benefits with respect to such individual and such persons, before reduction under this section, which is made effective for months after the first month for which reduction under this section is made."

**3.** Section 204 of the Social Security Act, 42 U.S.C.A. § 404, provides:

"(a) Whenever the Secretary finds that more or less than the correct amount of payment has been made to any person under this title, proper adjustment or recovery shall be made, under regulations prescribed by the Secretary, as follows:

"(1) with respect to payment to a person of more than the correct amount, the Secretary shall decrease any payment under this title to which such overpaid person is entitled, or shall require such overpaid person or his estate to refund the amount in excess of the correct amount, or shall decrease any payment under this title payable to his estate or to any other person on the basis of the wages and self-employment income which were the basis of the payments to such overpaid person, or shall apply any combination of the foregoing.

* * * * *

"(b) In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by

ulations,[4] that he himself has promulgated.

The sole issue in this case is whether the Secretary's proposed assessment of the overpayment would defeat the purpose of Title II or would be against equity and good conscience. Therefore, the immediate task of this Court is to determine whether the Secretary's decision in this case is supported by substantial evidence.

The record reveals that plaintiff's sole source of income is $168.00 per month. This represents his workmen's compensation award. His property ownership is limited to his house and about fifteen acres of land. He owns no automobile, no insurance, no appreciable personal property, and does not have a bank account. Among the exhibits appearing in the record are various remarks and observations of administration personnel who met the plaintiff in personal encounters. For example, on January 15, 1969, a "District Office Statement" contained the following language:

"The wage earner seems very illiterate, and personally, I don't believe he knew that he wasn't due both the workmen's compensation and social security benefits. He has a 6th grade education, has been a coal miner all his life and walks with a cane."

At the hearing, plaintiff and the hearing examiner engaged in the following colloquy:

"Q. Did you ever understand throughout the entire time from the time you went to the Social Security District Office and made claim for social security benefits, did you ever during this entire time understand that you were not supposed to receive social security monthly payments and workmen's compensation payments at the same time?

"A. No, sir. When I went and first signed up, I wasn't getting no compensation, three or four months I didn't get nothing and when I got disabled they told me to go sign up on social security.

"Q. When you got disabled, someone told you to go to social security and sign up for benefits?

"A. Yes, sir.

"Q. And when you signed up for benefits, you were not then receiving workmen's compensation?

"A. No, sir.

"Q. Do you understand at this time that you were not supposed to receive both payments, that is, social security and workmen's compensation?

"A. No, sir, I didn't know that.

---

the United States from, any person who is without fault if such adjustment or recovery *would defeat the purpose of this title or would be against equity and good conscience.*" (Emphasis supplied).

4. 20 C.F.R. § 404.508(a) provides:
"* * * 'Defeat the purpose of title II,' for purposes of this subpart, means defeat the purpose of benefits under this title, i. e., to deprive a person of income required for ordinary and necessary living expenses. This depends upon whether the person has an income or financial resources sufficient for more than ordinary and necessary needs, or is dependent upon all of his current benefits for such needs. An individual's ordinary and necessary expenses include:
"(1) Fixed living expenses, such as food and clothing, rent, mortgage payments, utilities, maintenance, insurance (e. g., life, accident, and health insurance including premiums for supplementary medical insurance benefits under title XVIII), taxes, installment payments, etc.;
"(2) Medical, hospitalization, and other similar expenses;
"(3) Expenses for the support of others for whom the individual is legally responsible; and
"(4) Other miscellaneous expenses which may reasonably be considered as part of the individual's standard of living.
20 C.F.R. § 404.508(b) provides:
"* * * Adjustment or recovery generally will defeat the purposes of title II in (but is not limited to) situations when the overpaid person [from whom recovery is sought] needs substantially all his current income (including social security monthly benefits) to meet current ordinary and necessary living expenses."

"Q. Do you know today that you were not supposed to draw both benefits?

"A. I do now.

"Q. Mr. Waldron, do you believe that you were without fault in receiving social security monthly benefits at the same time you were receiving workmen's compensation weekly benefits?

"A. Yes, sir.

"Q. Why do you say that, Sir?

"A. Well, I know the other fellow was getting it, getting compensation and social security too.

On April 2, 1968, when the "Without Fault" questionnaire was filled out at the district office, an administration employee made the following documented observation:

"Mr. Waldron's explanation sounds reasonable. He was very humble and polite. He was dressed in rather meager clothes. * * * He said he had no reason to believe it wasn't his money. He had worked hard, had filed for it and got the money."

At the oral hearing in this case the hearing examiner concluded with the following remarks:

"Mr. and Mrs. Waldron, I want to thank both of you. I don't like to meet people under circumstances that have come about here, but *I assure you I understand your financial plight. I see it would be a tremendous hardship for you to pay back the sum, but I must consider the case within the law and the Social Security regulations.* I will do so * * *." (Emphasis supplied).

After a searching investigation of the record, we conclude that the decision of the hearing examiner, which became the final decision of the Secretary, is not supported by substantial evidence and that it is contrary to the law and regulations (see footnotes 3 and 4). Considering plaintiff's social and educational background, it seems clear that the administrative handling of his case was so complex as to be incomprehensible by him, and under such circumstances, to attribute "fault" to him is violative of the most elemental rules of equity. Moreover, by the overwhelming preponderance of evidence of record, the proposed assessment by the Secretary would cause the plaintiff to suffer severe financial hardship. The humanitarian goals of the Social Security Act are exactly opposite of such a result. Therefore, being of the opinion that the final decision of the Secretary would defeat the purpose of Title II of the Social Security Act and violate the principles of equity and good conscience, it should be, and it is, hereby reversed. Defendant's motion for summary judgment is accordingly denied.