**Ira HATFIELD, Plaintiff,**

**v.**

**Elliott RICHARDSON,\* Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. W-4966.**

United States District Court, D. Kansas.

July 23, 1974.

---

\* The Court file shows the name of the former Secretary of Health, Education, and Welfare, however, the Court takes judicial notice that the current Secretary of Health, Education, and Welfare is Caspar W. Weinberger.

John W. Jordan, Learned Craig & Foley, Wichita, Kan., for plaintiff.

Robert J. Roth, U. S. Atty., Benjamin L. Burgess, Jr., Asst. U. S. Atty., Wichita, Kan., and Paul P. Cacioppo, Reg. Atty., and Caroline McB. French, Deputy Reg. Atty., Region VII, Dept. of H.E.W., Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER

WESLEY E. BROWN, Chief Judge.

This is an action against the Secretary of Health, Education, and Welfare under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for judicial review of a final decision of the Secretary that plaintiff's retirement insurance benefits, as provided by Section 202(a) of the Social Security Act, 42 U.S.C. § 402(a), were subject to work deductions for excess earnings under Section 203 of the Social Security Act, 42 U.S.C. § 403, for the months of January 1968 and June through August 1969. Both the plaintiff and the Secretary have moved for Summary Judgment. The facts are not in dispute.

Plaintiff made application on June 27, 1967 and was awarded Social Security retirement insurance benefits effective September 1967 [Tr. 61–64]. Based on an annual report of earnings for 1968, deductions were imposed for January 1968 and June through December 1968 and for the months of January through August 1969 due to excessive earnings. The plaintiff, notified on November 6, 1969 that an overpayment of benefits existed in the amount of $1,646.40, was asked to make a refund [Tr. 88–89]. The plaintiff filed a request for reconsideration on November 17, 1969 [Tr. 91], and on January 22, 1971 he was advised that the initial determination had been affirmed and was asked to refund a total of $3,528 for the years 1968 and 1969 [Tr. 140–142].

Dissatisfied with these determinations, plaintiff requested and received a *de novo* hearing before a hearing examiner of the Social Security Administration, Bureau of Hearings and Appeals on May 12, 1971. The hearing examiner on September 22, 1971 issued a decision, finding that work deductions should not be imposed for any month of 1968 or 1969 since plaintiff was not paid "wages" in excess of $140 a month but that the additional amounts paid by the West Heights Methodist Church were specifically identified as traveling expenses and, therefore, not included as "wages" [Tr. 20–29]. The Appeals Council, however, reversed the decision of the hearing examiner on its own motion in a decision issued April 3, 1972 [Tr. 15–19]. The Appeals Council found that plaintiff had earned wages of more than $140 in the months of January 1968 and June 1968 through August 1969 and that, consequently, plaintiff's benefits were subject to deduction for those months [Tr. 19].

Section 205(g) requires the Secretary to file a certified copy of the transcript of the record including the evidence upon which the findings and decisions complained of were based. This has been done.

The decision of the Appeals Council is the decision of the Secretary and subject to Court review under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

The power of this Court, in a review of the pleadings and transcript of the record before the Secretary requires an acceptance of the Secretary's findings of fact if supported by substantial evidence and legally viable. If the Secretary's findings are not supported by substantial evidence or if his conclusions of law are unsound, then the Court shall have the power, based on the record, to modify or reverse the decision of the Secretary with or without remanding the cause for rehearing. Otherwise, the

judgment of the Secretary shall be affirmed.

The two issues before the Court are (1) whether or not Hatfield's retirement insurance benefits are subject to work deductions due to excess wages for failure to comply with the record-keeping requirements of 20 C.F.R. 404.1026(a)(8); and (2) if so, under regulations must the Secretary collect or offset such overpayments.

Plaintiff Hatfield became entitled to insurance benefits under the Act in September 1967. He was employed during 1968 and 1969 as a director of visitation by his church. He claimed benefits from February 1968.

The record [Tr. 211] shows that the chairman of the official Board of Hatfield's church at a meeting called for the establishment of a Director of Visitation Evangelism at a proposed salary of $1,500 per year.

"To begin with the salary will be set at $1500 a year. This figure was determined in order that Mr. Hatfield will not lose his Social Security benefits. He cannot earn more than $1500 a year or else he will lose his benefits from Social Security.

"With Mr. Hatfield starting October 1, 1967 this would mean that his salary for the present church year (October 1, 1967 to May 31, 1968) would amount to $1000." [Tr. 215]

The Hearing Examiner summarized the issue to be determined succinctly as "whether the traveling or other reimbursed expenses were 'identified either by making a separate payment or by specifically indicating the separate amounts for both wages and expense allowances when combined in a single payment.'" [Tr. 28]

After referring to the fact that the church would reimburse expenses and a small amount for his services, found and concluded:

"The record contains statements from the church treasurer and church officials to the effect that this was their understanding and agreement, and check stubs furnished the claimant with many of his checks stated the definite identification of the amounts in question. While the record does not contain all of these check stubs, a representative of the social security district office stated that many of the check stubs had been submitted to him with such information thereon. On such occasions when the identification was not specifically made, there is a reasonable explanation for the inadvertence in not so stating on the check stubs. The claimant testified that the officers were changed, and through lack of understanding, the then current treasurer may have overlooked making this positive identification. Further, although the Act itself does not specifically define wages in this area, it is obvious that the Regulations Section 404.1026 of Social Security Regulations No. 4 was promulgated as an administrative expedient to avoid the necessary investigation and determination in matters of this nature as to how much of the remuneration received by the claimant was for actual out-of-pocket expenses and how much was remuneration for work rendered. In the instant case, the claimant testified (and which answer is reasonably believable) that he made an average of four trips a day averaging 12 miles per trip. Figuring the mileage at 10 cents a mile for 44 miles a day would mean that his out-of-pocket expense would be $4.40 a day, and computing this only on the basis of 20 days, would amount to a total out-of-pocket expense of $88 per month. The total remuneration received by the claimant for half-time work was only $150 a month, which would mean that he was paid less than $70 a month for his very worthwhile services. As hereinbefore indicated, it is obvious that the section of the Regulations involved was promulgated to prohibit employers and employees arranging for a fictitious accounting of travel expenses in order to avoid payment of taxes, and in so far as the

Social Security Act is concerned, to avoid deductions being imposed on benefits. Such is manifestly not the case here." [Tr. 28–29].

The Appeals Council summarized the church record as follows:

"The records of the church and the claimant indicate that he received the following total payments:

| | | |
|---|---|---|
| 9/67 thru 5/68 | — | $150/mo. |
| 6/68 thru 12/68 | — | 190/mo. |
| 1/69 thru 8/69 | — | 250/mo. |
| 9/69 thru 12/69 | — | 240/mo. |

The church payroll sheets show the following entries for the claimant:

| | |
|---|---|
| January 1968 | $150 |
| February 1968 – | |
| May 1968 | 110/mo. |
| June 1968 – | |
| August 1969 | 150/mo |
| September 1969 – | |
| December 1969 | 140/mo." [Tr 17]. |

The Appeals Council disposed of the Hearing Examiners findings of Hatfield's expense contention by concluding:

"The Hearing Examiner attempted to solve the problem by estimating the amount of the claimant's actual expenses to be $88 per month, and then deducting that amount from his 'total remuneration' of '$150 a month.' (Actually the claimant's combined salary and expense payments exceeded $150 in all months at issue, with the exception of January 1968.)

"The Social Security Act and the Regulations of the Social Security Administration do not however, provide for the exclusion from 'wages' of actual expenses, or expenses as understood or intended by the employer, but solely of expenses *identified* as such by the employer 'either by making a separate payment or by specifically indicating the separate amounts.' "

We have no problem in sustaining the Appeals Council's findings and conclusions numbered 1 and 2. [Tr. 187].

■ The third conclusion, of course, requires that we determine that because the employer failed to comply with H.E.

W. regulations and identify Hatfield's expenses as such (20 C.F.R. 404.1026 (a)(8)) the expenses .for which he was reimbursed become "wages". The regulation is clear and not ambiguous. Its application, however, caused the examiner a problem as it does us. This is particularly true when we consider the clear and convincing evidence of the intent of the church and Hatfield that all monies he received from the church were to be considered expenses if the pay exceeded the limits which would permit him to receive his social security allowance. The fine line between intent and fact is present here. The church did not separate in every instance "wages" and expense and identify the expense as such. Thus, there is evidence to support the Secretary's reliance upon the regulation to sustain the position that Hatfield received "wages" which constituted "overpayments" under the Appeals Council's findings numbered 3 and 4, that,

"3. In the months of January, 1968, and June 1968 through August, 1969, the claimant earned wages of more than $140.00.

"4. The claimant's (Hatfield's) earnings *for Social Security purposes* required the imposition of work deductions during the months of January, 1968, and June, 1968 through August, 1969, and benefit payments incorrectly made, created an 'overpayment'." [Tr. 187.] [Emphasis added.]

The Secretary's 5th conclusion as hereinafter set forth and as found by the Appeals Council, has caused us some concern. We, however, find we must agree with this conclusion, also

"5. The claimant (Hatfield) was not without fault in causing such overpayment, and there is no evidence that recovery would defeat the purposes of Title II of the Act or be against equity and good conscience. Therefore the recovery thereof was and is proper." [Tr. 187]

Under the Act, 42 U.S.C.A. § 403(b), the Secretary was required to make de-

ductions from benefits to which plaintiff would otherwise have been entitled during each month of the critical period in which plaintiff was charged with excessive earnings. Section 404 provides that recovery of the resulting overpayment could be made by decreasing subsequent benefits, except that no adjustment or recovery could be made where incorrect payment has been made to an individual "who is *without fault* [and where] adjustment or recovery would *defeat the purpose of this* title [Title II] or would be *against equity and good conscience.*" [Emphasis supplied.]

■ Pursuant to statutory authority, 42 U.S.C.A. § 405(a), the Secretary issued Regulations No. 4, found in 20 C. F.R. 404 [1], which defines the terms above italicized as follows:

"404.508 Defeat the purpose of Title II.

". . . means defeat the purpose of benefits under this title, i. e., to deprive a person of income required for ordinary and necessary living expenses. This depends upon whether the person has an income or financial resources sufficient for more than ordinary and necessary needs, or is dependent upon all of his current benefits for such needs."

"404.509 Against equity and good conscience; defined. ". . . means that adjustment or recovery of an incorrect payment . . . will be considered inequitable *if an individual* [regardless of his financial circumstances] . . . *relinquished a valuable right* . . ." [Emphasis supplied.]

"404.511 When an individual is at 'fault' in a deduction-overpayment. ". . . An individual will not be 'without fault' if the Administration *has evidence* in its possession *which shows either a lack of good faith or failure to exercise a high degree of care in determining whether circumstances which may cause deductions from his benefits* should be brought to the attention of the Administration by an immediate report or by return of a benefit check . . ." [Emphasis supplied].

■ We have concluded from the evidence in this record that the Secretary does not have evidence of a lack of good faith or a failure to exercise a high degree of care by Hatfield.

We do not consider the failure to file Form 632 "Refund Questionaire" because Hatfield did not deny he could repay the overpayment as a lack of good faith but shows the contrary. A copy of the Form 632 upon which the Secretary seeks to rely is not a part of this record.

The record shows that Hatfield is not largely or solely dependent on the Social Security benefits for the necessities of life. The Secretary admits that Hatfield became entitled to benefits in 1967 which means he and his employer had paid the Government money for the benefits he was to receive—money which the Government holds in trust for Hatfield and others.

The Secretary's contention that Hatfield failed to exercise a high degree of care in determining the circumstances which may cause deductions requires the Secretary to draw inferences not based on fact. We wonder if a reliance upon the word of his church is a failure to exercise a "high degree of care." Hatfield may have felt to paraphrase a T.V. commercial "if you can't trust your church, who can you trust?"

■ This brings us to the question of whether or not the Secretary's failure to recover the overpayment would under the regulations defeat the purpose of Title II.

Very simply the regulations 404.508 and 404.509 provide first if the claimant has financial resources sufficient for his

1. Regulations of a Federal agency are entitled to have the force of law when they are reasonable. Brasher v. Celebrezze, 340 F.2d 413 (8 Cir. 1965); Levine v. Ribicoff, 201 F.Supp. 692 (S.D.N.Y.1962).

needs, the Secretary can recover the overpayment, but if claimant is poor the Secretary need not collect; and second, even if he is financially able to pay but gave up a valuable right, the Secretary need not collect. As we read these regulations, 404.508 and 404.509 they have nothing to do with fault, good faith or degree of care, they simply direct the Secretary to collect or offset the overpayment unless the claimant is financially destitute or has proven he has given up a valuable right. Hatfield can not defeat recovery on either basis.

The Secretary's motion for Summary Judgment is Sustained. The Secretary will prepare, circulate and submit judgment accordingly.

It is so ordered.