**Sandra L. MILTON, Plaintiff-Appellant,**

v.

**Patricia Roberts HARRIS, Secretary of Health, Education and Welfare, Defendant-Appellee.**

**No. 79–1634.**

United States Court of Appeals, Seventh Circuit.

Heard Nov. 6, 1979.

Decided Feb. 20, 1980.

---

* *General Motors v. NLRB.* Its decision is reported at 233 N.L.R.B. No. 13 (1977).

Gerald M. Rubin, Chicago, Ill., for plaintiff-appellant.

Thomas P. Sullivan, U. S. Atty., Steven Plotkin, Asst. U. S. Atty., Chicago, Ill., for defendant-appellee.

Before CUMMINGS and SPRECHER, Circuit Judges, and DUMBAULD, Senior District Judge.*

PER CURIAM.

According to the district court complaint, plaintiff became disabled on December 8, 1971, and received disability payments under the Social Security Act until the end of November 1975 when defendant Secretary of Health, Education and Welfare (HEW) terminated those benefits and sought a refund of overpayments plaintiff had allegedly received. When upon reconsideration the HEW's Bureau of Disability Insurance affirmed its initial termination decision and upheld the claimed refund of overpayments, plaintiff sought *de novo* review of the overpayment question before an Administrative Law Judge (ALJ). The ALJ found for the Secretary and upon the plaintiff's administrative appeal the Appeals Council agreed. Plaintiff then sought review of the ALJ's decision in the district court, seeking to bar the Secretary from collecting any of the alleged overpayments. The defendant filed a motion for summary judgment on the ground that the ALJ's decision was supported by substantial evidence in the record (Record Item 4 at 8) and plaintiff filed a cross-motion for summary judgment "in view of all the evidence" (Record Item 7 at 12). Finding that "there is substantial evidence in the record to support the administrative law judge's holding that recovery of the overpayment would not defeat the purposes of the [Social Security] Act or be against equity and good conscience" (Record Item 8),[1] the district court granted the Government's motion on January 31, 1979. When on April 30, 1979, the district court denied plaintiff's petition for rehearing plaintiff appealed. We affirm.

---

\* The Honorable Edward Dumbauld, Senior District Judge of the Western District of Pennsylvania, is sitting by designation.

1. The district court disagreed with the ALJ's additional finding that the claimant was not without fault in causing the overpayments. That holding of the court below has not been challenged and therefore its correctness is not before us.

*Background*

Section 223(a)(1) of the Social Security Act provides for insurance benefits for certain persons who are "under a disability." (42 U.S.C. § 423(a)(1)). Under the Act, a "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical * * impairment * * * which has lasted or can be expected to last for a continuous period of not less than 12 months" (42 U.S.C. § 423(d)(1)). To qualify, a person must be unable to do either his previous work or, considering his personal characteristics, "any other kind of substantial gainful work which exists in the national economy" (42 U.S.C. § 423(d)(2)).[2] Under Regulations called for by the Act, even work activity performed on a part-time basis is considered substantial, though the work must be productive in nature and remunerative (20 C.F.R. § 404.1532(b)). The Regulations also specify that a disability ceases in the month in which the impairment is no longer of such severity as to prevent the individual from engaging in any substantial gainful activity, or the month in which the individual has regained his ability to engage in such activity (20 C.F.R. § 404.1539(a)).

Section 204 of the Act directs the Secretary to recover any overpayment of disability benefits, but provides that the United States cannot recover overpayments from "any person who is without fault if such adjustment or recovery would defeat the purpose of [the Act] or would be against equity and good conscience" (42 U.S.C. § 404(b)). Again the Regulations explain that recovery would defeat the purpose of benefits under the Act if it would "deprive a person of income required for ordinary and necessary living expenses." They specify that the existence of such a deprivation depends "upon whether the person has an income or financial resources sufficient for more than ordinary and necessary needs, or is dependent upon all of his current benefits for such needs" (20 C.F.R. § 404.508(a)). They also state that "recovery will defeat the purposes of [the Act] in (but is not limited to) situations where the person from whom recovery is sought needs substantially all of his current income (including social security monthly benefits) to meet current ordinary and necessary living expenses" (20 C.F.R. § 404.508(b)). The phrase "against equity and good conscience" meanwhile is interpreted in the Regulations to make recovery inequitable if the individual has "relinquished a valuable right * * * or changed his position for the worse" by reason of the overpayments (20 C.F.R. § 404.-509).

Finally, Section 205(g) of the Act governs judicial review by a district court of the Secretary's insurance benefit determinations and specifies that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In such cases the Secretary's findings of fact "if supported by substantial evidence, shall be conclusive * * *" (42 U.S.C. § 405(g)).

In his August 9, 1977, decision, the ALJ found, "based upon a preponderance of the credible evidence," that plaintiff was a 47-year-old woman, that she had attended school through the twelfth grade and had the equivalent of two years of college education, and that her usual and steady employment was secretarial work. According to the ALJ, plaintiff began receiving disability benefits under the Act in August 1972 after the Social Security Administration (SSA) determined that spinal surgery had left plaintiff under a disability that had commenced on December 8, 1971. Plaintiff continued to receive these benefits until November 1975. From July 1973 to March 1974 plaintiff engaged in a trial office work

---

**2.** Section 216 (42 U.S.C. § 416) provides for benefits for the children of certain qualifying persons. The qualifying persons must be under a disability defined in terms similar to those in Section 223(d)(1). The "period of disability" applicable to benefits for these children is also similar to the period for the disabled person himself. See, *e. g.*, Section 216(i) (42 U.S.C. § 416(i)).

program under Social Security regulations (20 C.F.R. § 404.1536) so that the SSA could determine if she was still disabled. A September 1973 letter from the SSA notified her that after the nine months of trial work the SSA would decide whether plaintiff was still disabled; otherwise she would receive benefits only for three months after the close of the trial work period.[3]

The ALJ found that plaintiff's trial work activity demonstrated that she possessed the ability to engage in substantial gainful activity commencing in April 1974, the first month after the close of the trial work period. Her entitlement to disability insurance benefits thus should have continued only through June 1974. Because she was not then officially notified of the termination of her entitlement, however, plaintiff continued to accept disability benefit payments from July 1974 through November 1975. In the meantime, plaintiff continued to work approximately half time for her trial period employer, earning over $200 per month through December 1975. After working intermittently during 1976, plaintiff began her own secretarial service in December 1976, to which she devoted between thirty and sixty hours per week in both a supervisory and secretarial capacity. The secretarial service continued through the date of the ALJ's decision, though it apparently never turned a profit and subsequently closed.

Based on the foregoing findings, the ALJ concluded that plaintiff's entitlement to dis-

ability insurance payments terminated at the end of June 1974, "the second month after the month in which the claimant's disability ceased." Therefore, he held that plaintiff had been overpaid benefits totaling $5,034.60 for the months of July 1974 through November 1975.[4] Relying on the September 1973 notice from the SSA, the ALJ found that plaintiff was not without fault in causing the overpayments. He then held that since plaintiff was operating her own business and had over $40,000 in savings accounts,[5] recovery of the overpayments would not defeat the purposes of the Act. Moreover, since she gave up no valuable right by accepting the overpayments, recovery would not be against equity and good conscience. Finally, the ALJ determined that recovery of the overpayments could not be waived by the defendant. On November 10, 1977, the Appeals Council upheld the ALJ's decision.

As previously noted, the district judge granted summary judgment for the Secretary in plaintiff's subsequent district court suit, stating that, unlike the ALJ, he regarded plaintiff as without fault, but that recovery would not defeat the purposes of the Act or be against equity and good conscience. In denying a petition for rehearing by plaintiff, the district judge filed a memorandum opinion on April 30, 1979, further explaining his ruling. Citing *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972), certiorari denied, 409 U.S. 859, 93 S.Ct. 144, 34 L.Ed.2d 105, and declining to

---

3. Exhibit 6 attached to the ALJ's decision is a September 7, 1973, letter from the SSA stating that plaintiff's nine-month trial work would conclude in March 1974, at which time the Social Security district office would review her disability claim to see whether she was still disabled within the meaning of the Act. The letter informed plaintiff that she would receive three months' additional benefits after the trial period even if she was found to be no longer disabled. The letter also suggested that plaintiff contact any Social Security office if she had any questions about the contents of the letter or about other Social Security matters. Plaintiff afterwards never contacted an SSA office.

4. Plaintiff also had been receiving benefits for her daughter Cheryll pursuant to Section 216 of the Act. In an attachment the SSA notice of

termination notified plaintiff that through plaintiff Cheryll had been overpaid $2,050.80, bringing the total family overpayment to $7,085.40. Plaintiff's district court complaint alleges that the Secretary is seeking repayment of the $2,050.80 paid to plaintiff for Cheryll. Yet the ALJ's decision states that the Secretary seeks only $5,034.60. Furthermore, defendant's memorandum in support of summary judgment in the district court states that only $5,034.60 is at issue (Record Item 5 at 2). We therefore do not reach the question of overpayment benefits for Cheryll.

5. The ALJ also referred to plaintiff's testimony that she owned a single-family residence in Tennessee with a value of $32,000 and a mortgage of $15,000.

follow *Nickol v. United States*, 501 F.2d 1389 (10th Cir. 1974), Judge Kirkland stated that a judicial determination of the correctness of an administrative finding (such as the ALJ's finding here) presents only a question of law and not a question of fact, so that summary judgment was appropriate. He noted that the district court's duty on review to determine whether the ALJ's findings and conclusions were supported by substantial evidence represents a limitation on review and does not present new questions of fact. Then, relying on *Sierakowski v. Weinberger*, 504 F.2d 831, 835–836 (6th Cir. 1974), and *Hatfield v. Richardson*, 380 F.Supp. 1048, 1052–1053 (D.Kan.1974), the court reaffirmed its earlier conclusion that the ALJ's "findings and conclusions in this case are supported by substantial evidence when the record is considered as a whole, and that the ALJ properly applied the appropriate legal standard." The court concluded by stating that

> "[s]pecifically, substantial evidence supports the ALJ's conclusions that plaintiff possesses assets sufficient to prevent repayment from depriving plaintiff or her family of ordinary and necessary living expenses, and that plaintiff gave up no valuable right by accepting the overpayments." (Record Item No. 14.)

*The ALJ Applied Correct Legal Standards and Allowed Full Development of the Record.*

As a preliminary matter, plaintiff contends that the district court failed to consider and determine properly whether the ALJ employed the correct legal standards or allowed a sufficient development of the record. The district court's response to the rehearing motion addressed the question of legal standards, and the record indicates that the ALJ followed the dictates of the Act. To be sure, the ALJ found both that plaintiff was at fault and that recovery would not defeat the purposes of the Act or be against equity and good conscience. Yet far from allowing his conclusion on one issue to influence improperly his consideration of the other, the ALJ merely found in the alternative on the chance that

the district judge would decide differently on the question of fault, as of course he ultimately did. Such alternative rulings are indisputably proper.

Judge Kirkland's disagreement with the ALJ on the question of fault adequately demonstrates that the district court considered the administrative record as a whole. There is also little evidence that the ALJ improperly restricted plaintiff's proof at the administrative hearing. The ALJ's apparent refusal to acknowledge the existence under the Act of a "partial disability" represented an accurate understanding of the law, while plaintiff's evidence on her own understanding of "poverty level" was of doubtful relevance in considering whether she relinquished any valuable right as a result of the SSA overpayments. Plaintiff could not have shown that recovery of the overpayments was inequitable merely because she had subjectively determined that by virtue of the disability benefits her income was too high for her to qualify for public assistance. The record meanwhile is devoid of any suggestion that the ALJ otherwise limited the evidence on plaintiff's actual loss of public aid entitlements. Finally, if the record were underdeveloped, the proper course for plaintiff was to request the district judge to remand the case to the Secretary for further fact-finding, a request that should specify the additional evidence to be introduced. *Lechelt v. Cohen*, 428 F.2d 214, 216 (7th Cir. 1970). Plaintiff neither made such a request nor identified the relevant evidence.

*Recovery of the Overpayments Would Not Defeat the Purpose of the Social Security Act.*

The hearing before the ALJ showed that plaintiff had savings of over $40,000 and $17,000 worth of equity in Tennessee real estate, that she received $3,500 per year in interest income from her savings, and that she earned over $200 per month from July 1973 through December 1975. At the time of the hearing she had begun to operate a business that was meant to show a profit in six months. Her children were

no longer dependent upon her, she lived alone in a five-room apartment, and she was able to devote 60 hours per week to her new business. This evidence was sufficiently substantial to make "conclusive" under Section 205(g) of the Act the ALJ's ultimate finding that plaintiff did not need the benefits for subsistence and thus that recovery of the overpayment would not defeat the statutory purpose.

■ Plaintiff maintains, however, that the Regulations permitted the ALJ to consider only her income, not her other financial resources, in making this determination. The Regulations suggest otherwise. Although, as noted earlier, 20 C.F.R. § 404.-508(a) speaks initially in terms of "income," it also acknowledges that any determination will ultimately depend on "whether the person has an income or *financial resources* sufficient for more than ordinary and necessary needs" (emphasis added). Given this explicit reference to financial resources, the statement in Section 404.508(b) of the Regulations that recovery will defeat the purposes of the Act if a person needs "all of his current income * * * to meet current ordinary and necessary living expenses" must describe the rule when other means of support are absent. This conclusion is buttressed by the frequent suggestions in the case law that a person's entire financial position should be considered. *Sierakowski v. Weinberger*, 504 F.2d 831, 836 (6th Cir. 1974); *Cucuzzella v. Weinberger*, 395 F.Supp. 1288, 1297 (D.Del.1975); *Hatfield v. Richardson*, 380 F.Supp. 1048, 1053 (D.Kan. 1974); see also *Waldron v. Finch*, 307 F.Supp. 1384, 1387 (S.D.W.Va.1970). The cases plaintiff cites to the contrary merely refer to the language on income in the Regulations without deciding the question whether other resources may be considered.

*Recovery of the Overpayments Would Not Be Against Equity and Good Conscience.*

■ Although plaintiff argues that recovery here would be "against equity and good conscience," she has not carried her burden of showing relinquishment of a valuable right or a change for the worse in her position. Plaintiff does urge that without the benefits she would have been eligible for public housing, but the record shows that after some inquiry into the matter she chose not to apply, apparently because her landlord refused to assign her lease to the Chicago Housing Authority. As already noted, plaintiff's private understanding of her position is insufficient evidence of a change in position. Further, although plaintiff testified that her benefits led to a reduction in financial aid for her daughter's education, a letter in the record from the Art Institute of Chicago states that plaintiff's entitlement to disability insurance benefits did not reduce the amount of financial aid available to Cheryll.[6]

*Cucuzzella v. Weinberger*, 395 F.Supp. 1288 (D.Del.1975), upon which plaintiff relied in her brief and at oral argument, lends scant support to her position. In that decision, the court remanded a case to the Secretary to consider whether a mother receiving benefits to which she was not entitled for one child had herself incurred any additional expense by thereafter sending another child to college. In the case at bar, plaintiff has offered no evidence that she incurred such additional expenses as a result of her daughter Cheryll's enrollment at the School of Art Institute. The most plaintiff could say is that without her own benefits she would have been forced to rely on the benefits for Cheryll and thus would not have allowed Cheryll to apply to a school where, as the record does show, the benefits for Cheryll were considered in the calculation of financial aid. But even assuming this attenuated proof of reliance were within the intention of the Regulations, plaintiff has never offered evidence that Cheryll's enrollment reduced the

---

6. That letter does state that plaintiff's benefits for Cheryll were considered in computing Cheryll's financial aid at the Art Institute's School. This statement is perhaps germane to a decision whether recovery of plaintiff's benefits for Cheryll by the Secretary would be inequitable, but because that issue is not before us (see note 4 *supra*), we do not express an opinion on the matter.

amount available to the household from Cheryll's benefits. Thus although as *Cucuzzella* indicates a "change of position may be quite minor" and yet sufficient (395 F.Supp. at 1298), any change here is too speculative as well as too remote to upset the ALJ's finding that recovery would not be inequitable.

*Summary Judgment Was Appropriate.*

■ Having herself sought summary judgment unsuccessfully in the district court, plaintiff is now in the awkward position of arguing that summary judgment is inappropriate when the district court is required to consider whether substantial evidence in the record supports the ALJ's decision. Even assuming this belated challenge is proper,[7] plaintiff's argument runs counter to both the language of the statute and our understanding of this standard of review. As noted above, Section 205(g) of the Act expressly permits a reviewing district court to enter judgment "[upon] the pleadings and transcript of record," a mandate that at least entitles a district judge to restrict consideration as in a summary judgment procedure. See *Orlandini v. Weinberger,* 421 F.Supp. 586, 589 (E.D.Wis.1976). This conclusion seems all the more appropriate since the statute describes the ALJ's factual determinations in such cases as "conclusive" when supported by substantial evidence. Here Judge Kirkland had the pleadings and the transcript before him and he obviously scrutinized them carefully. The procedure he adopted was therefore free from error.

■ The question whether substantial evidence supports an ALJ's finding does not, as plaintiff contends, itself raise material issues of fact. Rather that standard of review presents the district court with a question of law. *Beane v. Richardson,* 457 F.2d 758, 759 (9th Cir. 1972), certiorari denied, 409 U.S. 859, 93 S.Ct. 144, 34 L.Ed.2d 105. See also 6 Moore's Federal Practice 56.17[3] at 56–694 and nn. 6–8 and cases cited therein. We are aware that in *Nickol v. United States,* 501 F.2d 1389 (10th Cir. 1974), the Tenth Circuit has reached a different conclusion, arguing that *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136, requires a more thorough consideration of an administrative record than is possible under a summary judgment procedure.[8] But neither *Nickol* nor *Citizens* was an SSA case, and neither discussed the effect of a provision such as Section 205(g).[9] In *Citizens,* moreover, the Supreme Court made clear that its decision was not an interpretation of a "substantial evidence" requirement. 401 U.S. at 414–415, 91 S.Ct. at 822–823. Nor does that case indicate that the kind of scrutiny required of a district court makes summary judgment inappropriate. The "substantial evidence" requirement imposes a specific limitation on the district court, barring it from overruling the ALJ if the record before it provides a substantial evidentiary basis for the ALJ's decision. In seeking to establish whether the ALJ's factual determinations support his legal conclusions, the district court obviously must carefully peruse the proceedings below. But for this purpose the evidence adduced by the ALJ remains an uncontested matter of record in the district court.[10] Of course, a plaintiff can always choose instead to challenge the completeness of the record or

7. Plaintiff did raise the issue in her motion for rehearing in the district court (Record Item 9).

8. It should be noted that the judgment of the district court in *Nickol* merely stated without explanation that there was evidence to support the ALJ's decision. 501 F.2d at 1390.

9. In *Orlandini v. Weinberger, supra,* the district court found that because Section 205(g) bars the district court from considering evidence outside the record, summary judgment is too liberal a procedure and that a procedure like judgment on the pleadings would be more appropriate. It concluded, however, that the entire issue is more a matter of form than of substance. Indeed, even when Section 205(g) is not at stake the Tenth Circuit itself has apparently approved a mere formal compliance with *Nickol.* See *Roberts v. Morton,* 549 F.2d 158 (10th Cir. 1976).

10. It is of course mere sophistry to argue that the material issue of fact is whether substantial evidence exists. One might just as well say that summary judgment is never proper because there is always a dispute over whether a material issue of fact exists.

the ALJ's authority (see 6 Moore, *supra*, at 56.17[3] n. 6), and *Citizens* directs the district court to consider such matters.[11] But this option does not preclude the use of summary judgment where, as here, the administrative hearing was satisfactory. Therefore, we respectfully decline to follow the holding of the *Nickol* case and align ourselves with the Ninth Circuit in *Beane*.

Judgment affirmed.

11. Although the Court in *Citizens* also directed the district court to "consider whether the [administrative] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment" and specified that "this inquiry into the facts is to be searching and careful," 401 U.S. at 416, 91 S.Ct. at 823–824, it did so in the context of a standard that inquires whether the administrative decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." That standard is inapplicable in this case.