Alice H. CUPLER, Plaintiff,

v.

SECRETARY OF HEALTH, EDUCATION AND WELFARE of the United States of America, Defendant.

Civ. A. No. 64–1197.

United States District Court
W. D. Pennsylvania.

Feb. 24, 1966.

Gaylord W. Greenlee, Greenlee, Richman, Derrico & Posa, Washington, Pa., for plaintiff.

Robert Tucker, Asst. U. S. Atty., Pittsburgh, Pa., for defendant.

WILLSON, District Judge.

This action is brought by the plaintiff Alice H. Cupler against the Secretary of Health, Education and Welfare under Section 205(g) of the Social Security Act (42 U.S.C.A. Section 405(g)) for judicial review of a "final decision" of the Secretary. Defendant had allowed the plaintiff's claim for mother's insurance benefits under Section 202(g) (1) of the Social Security Act (42 U.S.C.A. Section 402(g) (1)) based on the earnings record of Ralph E. Scurfield, deceased insured individual. The claim was thereafter disallowed because plaintiff had failed to establish that she met the relationship requirement of the Social Security Act as the legal "widow" of Ralph E. Scurfield.

The case is before the Court on the motion of the United States Attorney for summary judgment pursuant to the provisions of Rule 56. The assertion is made that there is no genuine issue as to any material fact and that the defendant is entitled to judgment as a matter of law.

The plaintiff in this case—now Alice H. Cupler—claims that on the death of one Ralph E. Scurfield on May 11, 1957, she became his lawful widow and thereby became entitled to mother's insurance benefits under the Social Security Act as amended.

In the first instance, defendant recognized plaintiff as the widow and authorized the payments which were made and only discontinued upon plaintiff's daughter reaching 18 years of age. Some 5 years after the death of the wage-earner Ralph Scurfield, this controversy arose because one Catherine M. Woods on August 20, 1962, wrote a letter to the defendant as follows:

"Ralph *Skurfeld* was my first husband; however, I have never divorced him. I do not know if he ever divorced me. I do not know if he is living or dead. I do not know his social security account number or his parents names. If I learn any of this information, I may later file for benefits on his record. Mr. Woods and I were never ceremonial married."

Apparently the letter became the basis of an investigation by the defendant, and the matter ultimately came before a Hearing Examiner who in his report stated the issue before him was as follows:

"* * * whether Alice H. Cupler is the widow of the wage-earner, Ralph Scurfield, within the meaning of the Social Security Act, as amended, and if she was not, whether recovery of the resultant overpayment of mother's insurance benefits made to the claimant in the amount of $2,063.00 should be waived."

The defendant adopted the Hearing Examiner's findings and conclusions and an administrative determination has been made that plaintiff owes the sum of $2,063.00 to the Government. Plaintiff, on the other hand, strongly contests the finding that she was not the widow of the decedent and also contends that in any event the money should not be repaid, as plaintiff is without fault, as provided in Section 204(b) of the Social Security Act, and pursuant to the regulations of the Secretary, 20 CFR 404.506, the adjustment or recovery of the payments would be against equity and good conscience, as plaintiff has relinquished a valuable right. The second contention made by plaintiff is not reached in this opinion, as my conclusion is that there is insufficient evidence and a misapplication of the law by the defendant in the first instance in the decision reached by

the Hearing Examiner and affirmed by the Secretary.

█ The plaintiff in this case has sought a review of the findings and decision of the defendant. This Court is aware of the provision in the statute, 42 U.S.C.A. 405(g), that the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. However, at the outset it is to be noticed that the question presented herein presents ultimate conclusions drawn from evidentiary facts which themselves are not in dispute. This Court is, therefore, not bound by the conclusiveness of the findings of the administration. Kilby v. Folsom, 238 F.2d 699, (3rd Cir. 1956).

█ On June 20, 1929, at Bridgeport, Ohio, Ralph E. Scurfield and Alice Holliday Scurfield were ceremonially married. They continued to live together as man and wife until his death on May 11, 1957. In 1945—not having any natural born children—they adopted a daughter who survived decedent. In the marriage application (Exhibit 24), the statement is that Ralph E. Scurfield was 29 years of age on July 13, 1928; a resident of Elizabeth, Pennsylvania; and a butcher by occupation. Also in the application, Scurfield stated that he had not been previously married. Thereafter, decedent and plaintiff resided together and maintained their marriage relation until his death—a period of 28 years less 40 days. All the evidence indicates that during this period Mrs. Scurfield never received any intimation from her husband or other persons that her husband had been previously married. For 18 of those years these people lived in Washington County, Pennsylvania, where decedent's parents and his other relatives resided. During their married life they lived in but two places—in Washington County, Pennsylvania, where decedent had been raised, until they moved to Wheeling, West Virginia about 1949 which is the place where decedent died. From the record it appears that plaintiff's first intimation that her marriage was being questioned came from a representative of the Social Security Administration. Thus it appears that the marriage of plaintiff and decedent was unchallenged for 28 years—during the time decedent lived—and for nearly 5 years thereafter. That marriage is, of course, clothed with the presumption of validity.

The Examiner's decision requiring the return of the overpayments to plaintiff is based on a ceremonial marriage which took place on August 20, 1919, between Ralph S-k-u-r-f-e-l-d and Catherine M. Keenan. (Exhibit 15). As mentioned above, this marriage came to issue on the holographic inquiry made by Catherine M. Woods to the defendant, received at its Pittsburgh office on August 20, 1962. (Exhibit 20). It is emphasized that in this letter the writer says: *"Ralph Skurfeld* was my first husband * * *" She goes on to state that she had never divorced him. She states further—"I do not know if he is living or dead." She says she does not know his Social Security Account number or his parents' names. She says—"I may later file for benefits on his record." Her last sentence is—"Mr. Woods and I were never ceremonial married."

The Examiner found that the marriage of Catherine M. Keenan—a girl 18 years of age—to Ralph *Skurfeld,* when clothed with the presumption which the law gives it, has continued and outweighs the presumption that the 1929 marriage is valid. This is the point where this Court and the Examiner disagree. The Examiner and counsel before me have indicated that the law of Pennsylvania applies. However, notice that according to plaintiff her husband died in West Virginia. In any event, it has not been shown that the law of West Virginia is any different than the law of Pennsylvania, and the Court will proceed on the same basis as counsel and the Examiner.

█ The decision of the Supreme Court of Pennsylvania in Watt Estate, 409 Pa. 44, 185 A.2d 781, decided November 1962, is the last word on the substantive law on the weight to be given the various presumptions in a case of this nature. In the first place, there is the presumption that the 1919 marriage con-

tinues until the death of one of the parties or until a divorce is proven; but the law recognizes, as in *Watt,* the presumption of innocence in contracting the second marriage, as well as the presumption of the validity of the second marriage. Also underlying both presumptions is the theory that the parties to the second marriage did so innocently and without criminal or wrongful purpose or intent, and that the law favors marriage rather than concubinage. As in *Watt,* this Court is confronted with these several presumptions. The problem arises as to the weight which is to be given to each one. It is important and must be emphasized that the second presumption does not of itself destroy the first, but requires some proof of facts and circumstances to be given the effect of overcoming the first. The Court in *Watt* recognized several illustrations which may strengthen the second marriage, i. e., the other spouse had likewise remarried, as well as proof that the decedent had himself recognized the validity of the second marriage. And an important point also stressed in *Watt* is that he who claims the invalidity of the second marriage must overcome the presumption of its validity by *proof of some nature.* And further, that each case must be resolved on the basis of its own facts and circumstances and such inferences as fairly arise and can be reasonably drawn from them. It is also said that in the case of a conflict between the various presumptions, that presumption should yield which from the evidence and inferences therefrom render it the least probable to sustain. Now the Examiner in this case mentioned the Pennsylvania decisions and particularly stressed the *Watt* case in reaching his conclusion that the second marriage gave way to the first. I view the situation differently and come to a contrary conclusion. In the first place there is no evidence by any witness that the man who married the Keenan girl in the 1919 marriage is the same man who died on May 11, 1957, as the husband of the plaintiff. That marriage could have only lasted—according to Mrs. Woods—about 4½ months; that is, from August 20, 1919 until the end of the year as she indicated that the parties separated the latter part of 1919. From the record she never saw or heard from her husband after they separated. Also from the evidence she never saw or heard from his parents nor any of his friends who in turn had seen or heard from him. She states that Ralph *Skurfeld* was her first husband. She indicates, however, that she had not ceremonially married Mr. Woods, but nevertheless it appears that she married him, a ceremonial marriage not being required in Pennsylvania during that period of time at least. She still prefers to go under the name of Woods, and apparently regards her marriage to him as still existing. When all the facts became known to her, she withdrew her claim for social security. After his 1929 marriage, decedent recognized it as the valid and existing one, and neither he nor anyone of his family, or other persons, ever gave any hint to the plaintiff that there was any question concerning their marriage. Thus, we have two strong reasons in support of the presumption of validity of the 1929 marriage, which tend to overcome any presumption favoring the 1919 marriage. But, also, the 1919 marriage was a ceremony between Ralph S-k-u-r-f-e-l-d and Catherine M. Keenan. There are documents from the Clerk of Courts of Allegheny County (Exhibit 19) and Washington County (Exhibit 18) in Pennsylvania, and Ohio County in West Virginia (Exhibit 17), to the effect that there has been no divorce between Ralph *Scurfield* and Catherine M. Scurfield, but there is no certificate whatsoever as to any divorce between Ralph *Skurfeld* and Catherine Skurfeld. I conclude that the two surnames are not necessarily one and the same. Of course, the first half of the names are pronounced the same, but spelled differently, that is, *Scur* and *Skur,* but the last half of the names are entirely different both in spelling and pronouncing. This fact alone does not overcome the 1919 marriage, but it strengthens the presumption already existing in favor of the second marriage. This is so especially because Scurfield—at all times since 1919 where it has appeared of

record—has made the statement that he had not been previously married. He so states in his application for his marriage license in 1929, and also in the 1945 adoption proceedings wherein plaintiff and decedent adopted a child. One might say that these two points do not detract from the validity of the first marriage and I agree, but the two points mentioned do strengthen the validity of the second marriage. To repeat, in Watt the Court says the second presumption does not of itself destroy the first, but requires some proof of facts and circumstances to be given the effect of overcoming the first. These two points, that the decedent said—that he had never been married, and the difference in names on the two marriage certificates—strengthen the presumption and tend to give validity to the second marriage. Assuming arguendo, that decedent was the man involved in the 1919 marriage, then it is established in the record that neither he nor Catherine recognized that marriage as existing. Catherine says in her letter that she does not know whether he divorced her. Under the law as applied in this situation, there is no proof that he did not. He had 10 full years to do so before his 1929 marriage, and there is no record here of non divorce—in the name of *Skurfeld* —in Washington County or West Virginia, or any place else. But finally, and most important in the ultimate conclusion that the 1929 marriage is valid, it seems to me, is that when all the evidence is examined there is absolutely no proof that the man involved in the two marriages is one and the same person.

▆▆▆ The Examiner says in his report that he—"is satisfied that the records pertaining to this marriage [1919] which include a consent to the marriage of Catherine signed by her Step-Father in which the wage earner is named as Ralph *Scurfield*, when considered with other evidence of record, sufficiently identifies him to have been the wage earner." I disagree with this finding. There is no similarity in the writing or the pronunciation of the two names which tends to identify the decedent and

Ralph *Skurfeld* as being one and the same person. This interesting subject is reviewed in Wigmore, Vol. IX, § 2529, p. 453. He discusses a supposed presumption of identity of persons from identity of name. He says three things are premised:

(a) A concordance in name alone is *always* some *evidence* of identity.

(b) In the greater number of cases the ruling is merely that identity of name may or may not be sufficient evidence to go to the jury or sufficient to support a verdict, depending on the circumstances.

(c) In (c) it is said that often a *genuine presumption* is enforced by the Courts, in the sense that the duty of producing evidence to the *contrary is thrown upon the opponent.

I take Wigmore's discussion as authoritative in the sense that where a genuine presumption is being applied, as in the instant case, there must be more than similarity of names in the two marriages to meet the requirement of identity. When this record was first examined and the difference in the spelling of the surnames noted, I was curious to see what evidence there was on the identity of decedent and the man in the 1919 marriage. This curiosity was aroused when I came to the statement of Mrs. Woods— which she made in her own handwriting —to a representative of defendant. So far as she is concerned she never saw or heard of her husband after their separation in 1919. She did not say nor has not said that the man she married is the man who died on May 11, 1957. No one else has come forward to say so, and there was no investigative report received by defendant which says so. The one fact on which the Examiner based his conclusion as to identity—was the name Ralph *Scurfield*—appearing on the consent to the 1919 marriage made by Catherine Keenan's Step-Father (Exhibit 25). But it is to be noticed that where the signature was required by the applicant on the marriage application the name was spelled—*Skurfeld*—as it is on the mar-

riage certificate. And in this connection also the decedent Scurfield, whenever he signed his name—including his marriage application in 1929, and social security registration in 1936, and in the adoption of his child in 1945—spelled it as plaintiff spells it. Wigmore in his work reviews a number of English cases and decisions from various states which require positive identity in certain situations. I conclude that the matter of identity is crucial in the instant case. The law on this matter seems settled. There must be some additional proof over and beyond mere identity of names appearing on records to overcome the presumption in this instance of the validity of the second marriage. Particularly is this so when the names are not only not spelled the same nor pronounced the same. It seems significant to this Court that Catherine Woods some 43 years after her first marriage—in Exhibit 20 received by defendant more than 5 years after decedent's death, that is, August 20, 1962, which was the first indication that defendant had of the existence of a prior marriage —said, "Ralph *Skurfeld* was my first husband." If so, the second marriage of decedent was bigamous, and his relationship with plaintiff was adulterous. To prove such a situation—in view of the dissimilarity of names—would certainly require positive identification. A host of decisions to this effect are enumerated in footnotes to Wigmore under the section and page cited. The Third Circuit case of Hefferman v. United States, 50 F.2d 554, supports the foregoing. In that case —a man of the same very unusual name, for the same offenses of selling liquor, at the same address—the Court held that at most identity of name is ordinarily prima facie evidence only. Also see Commonwealth v. Doe, 79 Pa.Super. 162, 169, (1922). In this case there is no suspicion of any meretricious relationship between the decedent and plaintiff. The Examiner has found plaintiff innocent and without fault in any respect. I believe the evidence before him compelled a finding that plaintiff's marriage to Ralph E. *Scurfield* on June 20, 1929 remained a valid and subsisting one until death occurred on May 11, 1957.

 After all is said and done in this case, the defendant is an officer of the Government. Yet the contest is between the plaintiff and the defendant under the statute. The defendant is the person who claims invalidity of the second marriage. He has the burden of proof, as the Supreme Court of Pennsylvania said in *Watt,* 409 Pa. page 54, 185 A.2d page 786:

"The real thrust of the several presumptions is to place the burden of proving the invalidity of the second marriage upon the person who claims such invalidity and to require proof of *some nature* that the first marriage was not dissolved by death or divorce at the time of the second marriage. From the presumption in favor of the validity of the second marriage and the presumption of innocence upon the part of the parties to that marriage there follows, as a corollary, another presumption i. e. that either death or divorce had terminated the prior marriage, and he who claims the invalidity of the second marriage must overcome that presumption by proof of *some nature.*"

The defendant has presented no proof on the record made before the Examiner which overcomes the presumption of the validity of the August 20, 1929 marriage. Thus, the presumption in favor of the second marriage prevails, and the motion of the Government must be and is denied.