Catherine M. WOODS a/k/a Catherine
M. Scurfield, Plaintiff,

v.

John W. GARDNER, Secretary of Health,
Education and Welfare of the U. S. A.,
Defendant.

Civ. A. No. 67–1168.

United States District Court
W. D. Pennsylvania.

June 28, 1968.

Henry G. Beamer, III, of Metz, Cook, Hanna & Kelly, Pittsburgh, Pa., for plaintiff.

Gustave Diamond, U. S. Atty., by Vincent A. Colianni, Asst. U. S. Atty., Pittsburgh, Pa., for defendant.

## OPINION AND ORDER

MARSH, District Judge.

The plaintiff, Catherine M. Woods, commenced this action pursuant to § 205(g)[1] of the Social Security Act to review a decision of the Secretary of Health, Education and Welfare holding that plaintiff is not entitled to a waiver of recovery or adjustment of an overpayment of widow's benefits in the amount of $1,632.70 erroneously paid to her as the widow of one Ralph Scurfield, and that adjustment thereof should be made by deductions from her monthly old-age insurance benefits (Tr., p. 12). The Secretary has moved for summary judgment on grounds that plaintiff has failed to establish that recovery by the Secretary, as permitted by § 204(a), would defeat the purpose of the Act or be against equity and good conscience, as provided in § 204(b) of the Act.[2]

Plaintiff maintains that the Secretary's decision requiring recovery of the widow's benefits erroneously paid to her is contrary to the purpose of the Social Security Act and against equity and good conscience. She also contends that she was denied due process because she was not made a party to the case of Cupler v. Secretary of Health, Education & Welfare, 252 F.Supp. 178 (W.D.Pa. 1966), which decision determined that Catherine M. Woods, the plaintiff, was not the legal widow of Ralph Scurfield.

We agree with plaintiff's first contention, and also hold that the issue of her widowhood should be remanded for consideration of additional evidence she believes she has which would result in a finding that she is the legal widow of Ralph Scurfield.[3]

---

1. Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g) provides in pertinent part:
   " * * * The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."
   Section 205(h) of the Act, 42 U.S.C.A. § 405(h) makes review under § 205(g) exclusive.

2. Section 204(a) of the Act, 42 U.S.C.A. § 404(a), provides in pertinent part with respect to recovery of overpayment:
   "Whenever an error has been made with respect to payments to an individual under this subchapter * * * proper adjustment shall be made, under regulations prescribed by the Secretary, by increasing or decreasing subsequent payments to which such individual is entitled."
   Section 204(b) of the Act, 42 U.S.C.A. § 404(b), reads:
   "There shall be no adjustment or recovery by the United States in any case where incorrect payment has been made to an individual who is without fault * * * and where adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience."
   Pursuant to authority conferred by § 205(a) of the Act, 42 U.S.C.A. 405(a), the Secretary has defined the phrase "defeat the purpose of this subchapter [Title II]" to mean:
   " * * * [T]o deprive a person of income required for ordinary and necessary living expenses. This depends upon whether the person has an income or financial resources sufficient for more than ordinary and necessary needs, or is dependent upon all of his current benefits for such needs." 20 C.F.R. 404.508.
   "Against equity and good conscience" has been defined to mean that:
   " * * * [A]djustment or recovery of an overpayment will be considered inequitable if the individual (regardless of his financial circumstances) has, by reason of the overpayment relinquished a valuable right * * * or changed his position for the worse * * *." 20 C.F.R. 404.509.

3. In her brief plaintiff contends that the birth and death certificates of her child will disclose that its surname was spelled

The circumstances of this tangled case resemble the plot complications of a Victorian novel. Ralph Scurfield, the wage earner upon whose earnings the asserted overpayment was made, died on May 11, 1957. Alice Scurfield, known as Alice H. Cupler after her remarriage, established to the satisfaction of the Social Security Administration that she and the wage earner were married June 20, 1929,[4] and she was awarded monthly mother's insurance benefits commencing May, 1957 as the widow of Ralph Scurfield. She continued to receive these benefits until June, 1959, when her minor daughter became 18.

On October 29, 1962, Catherine M. Woods applied to the Social Security Administration for benefits as the widow of "Ralph E. Scurfield". Earlier, on August 20, 1962, she had filed a statement of claim with the Administration averring only that "Ralph Skurfeld was my first husband * * *" and indicating that though she had never divorced him, she neither knew if he had divorced her nor had any knowledge of whether he was then living or dead. Contemporary documents made part of the Secretary's record verify the marriage, on August 20, 1919, of Catherine M. Keenan (plaintiff's maiden name) and one whose signature on the marriage license application appears as "Ralph Skurfeld". The bridegroom is so identified on two other contemporary documents, but on the signed consent of the bride's father to the marriage of his minor daughter, he is identified as "Ralph Scurfield".

The plaintiff's application for marriage license reveals that her husband, Ralph *Skurfeld*, was born at Elizabeth, Pennsylvania, and that his deceased father's given name was Thomas and his mother's maiden name was Katie Leach,

and that she lived in Elizabeth. With remarkable coincidence, if Ralph *Skurfeld* and Ralph *Scurfield* were not the same person, the certified copy of application for marriage license of Ralph E. Scurfield and Alice Holliday shows that he resided in Elizabeth, Pennsylvania, was born in that community, his father's given name was Thomas and his mother's maiden name was Catherine Leach (Exs. B–25, p. 124, B–24, p. 122; see also, Ex. B–14, p. 105). The plaintiff asserted that she instituted a divorce proceeding against Ralph *Scurfield* at No. 1254 October Term, 1923, in Pittsburgh, but did not complete the action (Exs. B–40, p. 215, B–11, p. 97).

On April 16, 1963, the Department advised Alice H. Cupler of its possession of this evidence and on July 30, 1963, notified her of its Reconsideration Determination that she was not the legal widow of Ralph Scurfield for the reason that his 1919 marriage to Catherine M. Keenan was still in force and effect at the time of his marriage ceremony with Alice on June 20, 1929. This was accompanied by notice that the mother's benefits paid to her were an overpayment and that she could not be relieved of responsibility for their repayment.

Meanwhile, on March 22, 1963, the Administration had awarded Catherine M. Woods widow's insurance benefits in the amount of $37.30 per month as the legal widow of Ralph Scurfield, effective October, 1962, which, added to the $58.-40 per month reduced old-age benefits she had received on her own account since October, 1962, made a total monthly benefit of $95.70. These sums were subsequently adjusted, effective 1965, to $39.10 and $63.40, respectively, for a total monthly benefit of $102.50.

---

Scurfield; that the name of her child's father is similarly spelled on these documents. These alleged documents are not part of the Secretary's record. She contends that she has other additional evidence to substantiate that she is the widow of Ralph Scurfield, but this other evidence is not specified (Tr., p. 27).

4. The marriage license for Ralph Scurfield and Alice Holliday was issued in Ohio and the marriage ceremony was performed by a West Virginia minister (Ex. B–24, p. 122). It appears that Ralph Scurfield was domiciled in West Virginia at the time he died (Ex. B–9, p. 92; Tr., pp. 140, 171, 187).

After being notified that she must repay the overpayment, Mrs. Cupler requested a hearing, which was held April 9, 1964. The hearing examiner concluded that the wage earner was the same man who married Catherine M. Keenan in 1919 and that this marriage continued to his death. Alice H. Cupler was present at this hearing; Catherine M. Woods was not. The Appeals Council declined to review, and the examiner's determination became the Secretary's final decision. Mrs. Cupler then sought review of the Secretary's decision in this District Court.

In Cupler v. Secretary of Health, Education & Welfare, supra, the court, in a detailed and carefully reasoned opinion, examined the evidence before the examiner and the presumptions applicable where the validity of a marriage is in issue, and reversed the examiner's decision. It was observed "that when all the evidence is examined there is absolutely no proof that the man involved in the two marriages is one and the same person." Id., p. 183. Citing the decision of the Supreme Court of Pennsylvania in In Re Watt's Estate, 409 Pa. 44, 185 A. 2d 781 (1962), for the principle that one claiming the invalidity of a second marriage must overcome the presumption of its validity by proof of some nature, the court concluded that the Secretary had "presented no proof on the record made before the Examiner which overcomes the presumption of the validity of  *  * [Alice H. Cupler's] marriage. Thus, the presumption in favor of the second marriage prevails  *  *  *."

In the action sub judice, the Secretary has found the *Coupler* decision conclusive that the plaintiff, Catherine M. Woods, is not the legal widow of Ralph Scurfield, even though she was not a party in that case.

Following this decision, in April, 1966, the widow's benefits paid to plaintiff were suspended, but payments of old-age insurance benefits of $63.40 monthly on her own earnings were continued. Plaintiff was thereafter advised by letter on March 8, 1967, that an overpayment of $1,632.70 would be recovered by withholding $46 per month from her monthly old-age insurance benefits due from February, 1967 through December, 1969. Plaintiff commenced the present action to obtain review of that decision. The initial issue presented is whether substantial evidence supports the Secretary's decision that under § 204(b) recovery of the overpayment could not properly be waived.

■ Unlike the Secretary, we are satisfied that plaintiff has met her burden of proof under § 204(b) by showing that recovery of this overpayment would defeat the purpose of the Act and would be against equity and good conscience.

■ The hearing examiner prepared an exhaustive documentation of plaintiff's income and expenses, and much is made of the circumstances that plaintiff is employed as a domestic, receives free room and board, has take-home pay of $20 per week and received $26.41 interest on her savings account in 1966. But plaintiff is a woman now approaching 68 years of age; she has one artificial eye and her other eye has required surgery; her capacity to continue working is uncertain at best. Yet, if affirmed, it is certain that the Secretary's decision will force her to continue working to support herself throughout her 68th and 69th years since it is self-evident that she cannot subsist on monthly benefits of $14.40, the amount which remains after deduction of the $46 toward restitution of the overpayment. The purpose of the Act is to provide income for ordinary and necessary living expenses to persons of advanced years who would otherwise be obliged to work to obtain them. This, it seems to us, is precisely what plaintiff is being compelled to do, and, therefore, in our opinion, the purpose of the Act is being defeated. The result might be otherwise were it shown that plaintiff had private income which did not depend upon her labors. Her only apparent alternative would be to quit her job in expectation that the Secretary would restore her to full benefits

since she then might demonstrate that she was dependent on current benefits for all her needs. Plaintiff's job, however, is presently her only source of real security, which she would understandably be reluctant to give up.

We believe plaintiff should not be driven to this Hobson's choice for we think considerations of equity and good conscience likewise support her position. The Secretary in his brief concedes:

"It is undisputed that the plaintiff in this case was without fault in receiving the overpayment made to her as Ralph Scurfield's widow."

The Administration had ample opportunity to investigate the respective claims of plaintiff and Alice H. Cupler. After a thorough and responsible investigation, the Administration understandably determined the issue in favor of the plaintiff Woods and she in good faith accepted monthly benefits for more than three years until the Administration determination was reversed by the court.

It is argued that under the regulations[5] recovery of an overpayment will not be considered inequitable unless the individual, by reason of the overpayment, relinquished a valuable right or changed his position for the worse. It appears that when plaintiff spent some of the benefits and unknowingly became indebted for $1,632.70, her position indeed changed suddenly for the worse. In any event, the equities of the case are not, in our opinion, in favor of compelling plaintiff at this late stage in her life to spend almost three years in making restitution. Plaintiff is five years older than when it was first decided she was entitled to widow's benefits, and she would be in her 70th year before all the overpayment would be restored. Suffice to say, this is hardly the time of life for this elderly woman to have to face the prospect of paying off a debt which for her is quite large. We are confident Congress did not intend by §§ 204(a) and 204(b) to place so heavy a burden upon one who is the unfortunate and innocent object of an erroneous Administration determination.

The decision of the Secretary will be reversed with directions to restore plaintiff's benefits to the full amount of $63.40 per month retroactively for the period February, 1967 to date and hereafter.

■ We are also of the opinion that since plaintiff was not a party to the action brought by Alice H. Cupler against the Secretary, she is entitled to produce at a hearing whatever additional evidence she may have[6] in support of her claim as the legal widow of Ralph Scurfield. The clear import of the decision in Cupler v. Secretary of Health, Education & Welfare, supra, is that upon the records then before the court there was not substantial evidence to overcome the presumption of the validity of Alice's marriage to Ralph Scurfield. But the plaintiff now maintains that she can support her claim with additional evidence that is not part of the Secretary's record. In our opinion the *Cupler* decision cannot be set up as a bar to receiving such evidence, since the Secretary did not see fit to notify the plaintiff or implead her in that case. The plaintiff is entitled to her "day in court". Cf. Gardner v. Oldham, 381 F.2d 804 (5th Cir. 1967). However, accepting the conclusion that the marriage of Alice H. Cupler is presumptively valid, plaintiff must overcome that presumption with evidence, and if it should become clear that it is her intention merely to reargue the case on the evidence in the record which was before the Administration officials and the court, summary denial of her claim would seem to be justified.

We will, therefore, remand with directions to hear the additional evidence Catherine M. Woods purports to have to prove that she is the widow of the wage earner, Ralph Scurfield.

An appropriate order will be entered.

5. See f. n. 2, supra.

6. See f. n. 3, supra.