Stinson COKER and Effie Coker,
Plaintiffs,

v.

Patricia Roberts HARRIS, Secretary of
Health and Human Services,
Defendant.

Civ. A. No. 80-39-ATH.

United States District Court,
M. D. Georgia,
Athens Division.

March 2, 1981.

Kendrick Smith, Athens, Ga., for plaintiffs.

Bernard E. Namie, III, Macon, Ga., for defendant.

OWENS, District Judge:

Petitioners, an elderly couple who reside in Elberton, Georgia, contend that the Secretary of Health and Human Services erred when she found that petitioners were not entitled to a waiver of overpayment of benefits under Title XVI of the Social Security Act. The Secretary found that the claimants were overpaid a total of $2,181.00 in supplemental security income benefits due

to unincludable resources in the form of a savings account containing $4,371.22 and a savings certificate containing $1,600.00; that the claimants were without fault in causing the overpayment; and, that the refund of the overpayment would not defeat the purposes of Title XVI, nor would it be against equity and good conscience, nor would it impede the efficiency or effective administration of Title XVI because of the small amount involved. Petitioners on appeal seek reversal only on the last finding of the Secretary.

20 C.F.R. § 416.553 provides in pertinent part:

"Waiver of adjustment or recovery is proper when the person on whose behalf waiver is being considered is without fault, as defined in Section 416.552, and adjustment or recovery would defeat the purpose of Title XVI. For purposes of this subpart, adjustment or recovery of an overpayment will be considered to defeat the purpose of Title XVI:

(a) If such person's *current* total monthly income does not exceed:

(1) The applicable Federal monthly standard payment rate (See Subpart D of this part), plus

(2) One-third of the quarterly amount of earned or unearned income excludable pursuant to § 416.1165 (i. e. $20), plus

(3) One-third of the quarterly amount of earned income excludable pursuant to § 416.1167 but no more than $65, plus

(4) The applicable State supplementary payment, if any (See Subpart T of this part); or

(b) If recovery or adjustment would deprive such person of income or financial resources needed for ordinary and necessary living expenses under the criteria in Section 404.508(a) of this chapter." (Emphasis added)

The Administrative Law Judge found that a recovery or adjustment would not deprive

the Cokers of income or financial resources needed for ordinary and necessary living expenses as defined by § 404.508(a). Those expenses include:

"(1) Fixed living expenses, such as food and clothing, rent, mortgage payments, utilities, maintenance, insurance (e. g., life, accident, and health insurance including premiums for supplementary medical insurance benefits under title XVIII), taxes, installment payments, etc.;

(2) Medical, hospitalization, and other similar expenses;

(3) Expenses for the support of others for whom the individual is legally responsible; and

(4) Other miscellaneous expenses which may reasonably be considered as part of the individual's standard of living."

The salient facts in this case are as follows: Stinson Coker, 72 years old, and his wife, Effie Coker, 68 years old, live in Elberton, Georgia, in a home which has no indoor plumbing, and which they rent for twelve dollars a month. At the time of the filing of this lawsuit they lived on a combined income of somewhere between $251.30 (R. 50) and $286.70 (R. 100). Expenses for the couple as of November 20, 1978, were estimated at $278.00 per month. In January 1974, Stinson Coker became eligible for supplemental security income benefits when he was converted from the state welfare rolls; Effie Coker became eligible in October of that year. On March 6, 1978, claimants received from and returned to the Social Security Administration their Statement for Determining Continuing Eligibility for Supplemental Security Income Payments wherein they listed a savings account balance of $4,314.59 and a savings certificate of $1,600.00.[1] Social Security verified each amount and confirmed that the Cokers had exceeded the $2,250.00 limit for supplemental security income benefits since, at least, April 1976. Based on that determination the Secretary immediately stopped the supplemental benefits and notified claim-

---

1. The evidence suggests that this money was earned by picking cotton at $3.00 per hundred. (R. 74).

ants that they each must repay $1,090.50 in overpayments unless they could show they were without fault and could not meet *current* necessary living expenses if repayment was required.

On April 10, 1978, claimants, through Arnold Oglesby, owner of Northeast Georgia Green's Fuel Gas Company, promptly advised the Social Security Administration that the money had been set aside for some time as burial expense money since neither Mr. Coker nor his wife had insurance or property sufficient to cover burial costs.

Sometime on or around April 6, 1978, the Cokers transferred the money in the savings account to their two daughters jointly. By letter of September 13, 1978, one of the daughters stated that the money was so transferred "in case something happen to her [Mrs. Coker] and Daddy because they do not have any Death Insurance or Hospital Insurance." (R. 89).

By letter of September 18, 1978, Social Security advised that unless the overpayments were received within 30 days the matter would be referred to the General Accounting Office for collection action. (R. 91). The aforesaid matter was referred to GAO. (R. 92). On November 20, 1978, the Cokers, through Georgia Legal Services, filed an overpayment recovery questionnaire. Due to the Social Security Administration's referral of the matter to the GAO it was not until December 14, 1979, that a hearing was scheduled. During that time the Cokers were able to reapply for supplemental security income benefits which were conditionally granted upon the written agreement of the Cokers that $35.00 per month would be withheld to reduce the balance owed on the overpayment. This written agreement was entered into without the advice of Patricia Kalmans, an attorney for Georgia Legal Services, who the Athens office of the Social Security Administration knew at that time to be the representative of the Cokers.

At the December 14, 1979, hearing the Administrative Law Judge found that Mrs. Coker's mental capacity to comprehend was "very questionable;" and, that Mr. Coker could not read to write and was "functionally illiterate." (R. 17). Based on those findings the Administrative Law Judge determined the Cokers to be without fault in creating the overpayment. Because of the on-hand resources, *i. e.*, the savings account, the Administrative Law Judge found that overpayment would not defeat the purposes of the Act, would not be against equity and good conscious, and was not a small amount; overpayment could not therefore be waived. Following affirmation by the Appeals Council on April 4, 1980, claimants filed the present action in this court.

■  The above summary is but another example of the inefficient and misguided operation of our Social Security Administration. Based upon the record it appears that the Social Security Administration interviewed the Cokers only once between Mr. Coker's conversion from the state welfare rolls in 1974 and March 6, 1978, when the redetermination statement was submitted to the Athens Social Security Office. The date of that interview as shown on the SSI Redetermination Review Form (R. 64, 65), is December 30, 1976, approximately eight months *after* the date which Social Security now says the Cokers exceeded the $2,250.00 supplemental security income ceiling. While the paperwork, if any, accompanying the December 30, 1976, interview has not been filed with the court thereby calling into question whether Social Security ever contacted the Cokers prior to March 3, 1978, it is clear from the candid and prompt March 6, 1978, disclosure that the Cokers, had they been questioned about their resources in December 1976, would have immediately disclosed such. Any overpayment after December 31, 1976, could then have been avoided by the efficient operation of an interview the Social Security Administration shows they performed. This, coupled with the statement on the redetermination form which requires a review of a claimant's record once a year (R. 61) which, according to the transcript filed in this case, is absent for the years 1975, 1976 and 1977, compels the court to conclude not only that the Cokers were without

fault in receiving the overpayments but *compels a further finding that the sole* blame for any overpayment rests with the Social Security Administration.

In determining the question of whether the recovery of the overpayment would defeat the purpose of Title XVI, the Secretary relied on 20 C.F.R. § 416.553(b) which requires the Secretary to assess ordinary and necessary living expenses under § 404.-508(a). Included among the expenses listed are fixed expenses for life, accident and health insurance. Also included among allowable expenses are other miscellaneous expenses which may reasonably be considered as part of the individual's standard of living. In the instant case the Secretary erroneously failed to give serious consideration to the Coker's claim that the on-hand resources would be an ordinary and necessary expense for their burial. As one approaches an advanced age the questions of how one is going to be buried and who is going to be burdened with the accompanying expenses prey heavily on that individual's mind. *Indeed many elderly persons are* consumed with worry. Some relieve this worry by taking out burial insurance, others by taking out life insurance, or by giving a trusted individual an amount necessary to cover expenses. Still others, who are unaccustomed to the use of insurance or credit arrangements, prepare for burial expenses by setting aside a cash fund. Had the Cokers obtained insurance the Social Security Administration would not have complained about overpayments paid to the Cokers. Had the Cokers transferred the funds to their daughters before it exceeded $2,250.00 the Social Security Administration would not have complained. Instead, because the Cokers banked the money, it is somehow appropriate for the Social Security Administration to discount the stated purpose of the money, require repayment and in so doing level the full brunt of its administrative machinery at the Cokers with the intention of recovering those benefits which it negligently caused to be over-paid. Based on the failure of the Social Security Administration to promptly redetermine the supplemental security income benefits, the court finds:

■ (1) The Secretary erred in failing to take into consideration the purpose for which the savings account funds were to be expended, that is, as a burial expense fund. Given claimants advanced ages, reasonable amounts deposited into such a reserve fund should be included as a miscellaneous expense which, *if considered as funds from which recovery of overpayments could be* collected, would in this case defeat the purpose of the Social Security Act. The fact that such funds were to be used for burial expenses is supported by claimants' evidence and has not been rebutted by the Social Security Administration. The Secretary therefore erroneously considered the funds transferred to claimants' daughters as monies which could be considered a portion of claimants' *current* total monthly income; any increase in current total monthly income would be negated by a like increase in miscellaneous expenses for burial.[2] The repayment of overpaid benefits would defeat the purpose of the Act;

■ (2) The Secretary erred in finding that the recovery of overpayments was not against equity and good conscience. "'Against equity and good conscience' means that adjustment or recovery of an incorrect payment ... will be considered inequitable *if an individual ... by reason* of the incorrect payment ... changed his position for the worse." 20 C.F.R. § 404.-509. In the instant case claimants, had they been promptly informed that they were ineligible for supplemental security income benefits, could have either procured sufficient insurance to reduce their resources below the allowable limits or could have irrevocably transferred the funds to their daughters so as to maintain eligibility in the Supplemental Security Income program; and,

---

2. The court finds that $3,800.00, or that amount by which the Coker's resources could have been reduced so as to meet the $2,250.00 Supplemental Security Income ceiling, is a reasonable sum for the burial of two people.

(3) The Secretary erred in finding that this was not a small amount, that is, the amount which is measured by the current average administrative cost of handling such overpayment cases through adjustment and/or recovery processes, § 416.-555. While the Secretary has carefully drafted § 416.555 to provide for *average* administrative cost, the court questions whether the combined payment in this case was in excess of even an average costing scheme. The Secretary has provided no average costs for the court to consider. Based on the record compiled herein and the Social Security Administration's inefficient track record in general, the cost of cranking up the administrative machinery in the instant case far exceeded the amount to be collected. This is evidenced by the 126-page administrative record which includes a hearing before an Administrative Law Judge, and by the costs of defending such an action in this court.

Accordingly, plaintiffs' prayer that the decision of the Secretary of Health and Human Services be reversed and waiver of overpayments allowed is hereby GRANTED.

So ordered.