Retter TEAMER, Plaintiff,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.

Civ. No. H85–1091.

United States District Court,
N.D. Indiana,
Hammond Division.

April 23, 1991.

Rick C. Gikas, Merrillville, Ind., for plaintiff.

Andrew B. Baker, Jr., Assistant U.S. Atty., Dyer, Ind., for defendant.

## ORDER

LOZANO, District Judge.

The plaintiff, Retter Teamer ("Teamer"), brings this action pursuant to § 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g). Teamer seeks judicial review of the Secretary of Health and Human Services' ("Secretary") final decision denying Teamer a waiver of repayment of an overpayment of Social Security benefits. This matter is before the court on Teamer's Motion for Summary Judgment filed on December 3, 1986, and the Secretary's Motion for Summary Affirmance filed on January 30, 1987. For the reasons set forth herein, Teamer's Motion for Summary Judgment is GRANTED and the Secretary's Motion for Summary Affirmance is DENIED.

## PROCEDURAL HISTORY

On May 9, 1980, Teamer, at the behest of a Social Security official, filed an application for wife's insurance benefits. (A.R. 30–31, 44–47) She believed that she was entitled to receive the benefits for her 30-year old, mentally retarded son, Larry, who lived with Teamer and her husband. (A.R. 29–31) The Social Security Administration granted Teamer's application for benefits. (See A.R. 8) Teamer received benefits for the years 1980, 1981, 1982 and 1983. (A.R. 79) On November 13, 1983, the Social Security Administration advised Teamer that based on her earnings for 1980, 1981, and an estimate of her earnings for 1983, she received an overpayment since she was not due any benefits for those years. (A.R. 50) On June 27, 1984, the Social Security Administration found that Teamer was at fault in causing the overpayment because she failed to report her work activity and earnings. (A.R. 60–61) Teamer then met with a Social Security Administration Operations Supervisor on July 12, 1984. (A.R. 63–64) In a written report of the confer-

ence, the supervisor determined that Teamer was not at fault in causing the overpayment, but would still have to repay the debt because "income and expenses clearly indicate an ability to repay...." (A.R. 63–64) Finally, on October 26, 1984, the Social Security Administration notified Teamer that she had been overpaid a total of $11,324.40, the amount now in controversy. (A.R. 65)

Teamer requested a hearing before an Administrative Law Judge ("ALJ"). (A.R. 42) On February 11, 1985, an administrative hearing was held before the Honorable Francis J. O'Byrne. (A.R. 20–41) Teamer was present with counsel and testified at the hearing. On April 18, 1985, the ALJ found that Teamer was without fault in causing the overpayment, but that refund of the overpayment would not defeat the purpose of title II of the Act or be against equity and good conscience. (A.R. 10–11) Therefore, the ALJ did not waive recovery of the overpayment. (A.R. 11) On October 7, 1985, the Appeals Council denied Teamer's request for review of the ALJ's decision, making the ALJ's determination the final decision of the Secretary. (A.R. 2) Having exhausted her administrative remedies, Teamer now seeks judicial review of the Secretary's final decision.

FACTUAL BACKGROUND

At the administrative hearing on February 11, 1985, Teamer presented evidence concerning the overpayment of benefits and her family's monthly income and expenses. She testified that she received $312.00 every two weeks in worker's compensation benefits. (A.R. 33) Teamer also testified to receiving two union supplement checks ranging between $200.00 to $300.00, and to receiving a third union supplement check for $17.00. (A.R. 33–34) Teamer indicated that she only received union supplement checks during the six month period after she stopped working. (A.R. 34) Teamer affirmed that the only money she currently received in her name was $312.00 every two weeks. (A.R. 34) An Overpayment of Recovery Questionnaire, dated July 26, 1984, indicated that Teamer received union checks in the amounts of

$266.00 and $291.00 on November 7, 1983 and January 23, 1984, respectively. (A.R. 56–59) The Teamers' total monthly income from disability benefits, a retirement pension and worker's compensation benefits amounted to $1,869.00. (A.R. 85) This monthly income figure remains undisputed by the parties. (Secretary's Brief at 4.) Teamer also presented evidence establishing that her family maintained a savings account of approximately $200.00. (A.R. 86)

Teamer produced three documents, each of which approximated her monthly expenses. The first, dated July 26, 1984, detailed monthly expenses totaling $1,735.60, the second, dated December 14, 1984, indicated monthly expenses totaling $1,726.00, and the third, dated January 28, 1985, enumerated monthly expenses totaling $1,868.60. (A.R. 57, 85, 87) In addition, Teamer testified that she paid her son's dental bills which were not covered by medicare and, in support of this claim, presented a dentist's receipt indicating a payment of $100.00. (A.R. 39–40, 89)

In his calculation of Teamer's monthly income, the ALJ added $90.00 per month which he stated represented supplemental union payments. (A.R. 10) Moreover, the ALJ articulated an assumption that certain items, including dental bills, were "probably not paid out of [Teamer's] personal income." (A.R. 10) The ALJ relied on his calculation of Teamer's monthly income when he found that Teamer would be able to repay the overpayment.

DISCUSSION

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated "that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir.1988); *Beard v. Whitley County R.E. M.C.*, 840 F.2d 405, 409 (7th Cir.1988); *Roman v. U.S. Postal Service*, 821 F.2d 382, 385 (7th Cir.1987); *McGraw–Edison Co. v. Walt Disney Productions*, 787 F.2d 1163, 1167 (7th Cir.1986); *Federal Deposit Insurance Corp. v. Meyer*, 781 F.2d 1260,

1267 (7th Cir.1986). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts which might effect the outcome of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter*, 840 F.2d at 434 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 211 (1986)).

The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Donald v. Polk County*, 836 F.2d 376 (7th Cir.1988); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142 (1970); *Backes v. Valspar Corp.*, 783 F.2d 77, 79 (7th Cir.1986). To preclude summary judgment, a non-moving party must show a material issue of fact. "A party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard*, 840 F.2d at 410. Therefore, if a party fails to establish the existence of an essential element of its case on which it bears the burden of proof at trial, summary judgment will be appropriate. In this situation, "there can be no 'genuine issue as to any material fact', since a complete failure of proof concerning an essential element of a non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986). *See also Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511, 91 L.Ed.2d at 212.

This court's "[r]eview of the Secretary's findings is limited to a determination of whether those findings are supported by substantial evidence based on the record as a whole." *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir.1982); *see also Ray v. Bowen*, 843 F.2d 998, 1001 (7th Cir.1988); *Burnett v. Bowen*, 830 F.2d 731, 734 (7th Cir.1987). "Substantial evidence" has been described as "more than a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

It means, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion...." *Anderson v. Bowen*, 868 F.2d 921, 923 (7th Cir.1989) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); *see also Ray*, 843 F.2d at 1001; *Bauzo v. Bowen*, 803 F.2d 917, 923 (7th Cir.1986).

It is fundamental that this court not reweigh the evidence. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir.1986). While the court must examine the record as a whole in determining whether or not substantial evidence exists to support the findings of the Secretary, it should not engage in a *de novo* consideration of the evidence presented to the Secretary. *See Strunk v. Heckler*, 732 F.2d 1357 (7th Cir.1984). If the record as a whole contains substantial evidence to support the ALJ's factual determination, the decision of the Secretary must be affirmed unless there has been an error of law. *Waite v. Bowen*, 819 F.2d 1356, 1360 (7th Cir.1987); *Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir.1985). However, if the Secretary's determination resulted from an error of law, the district court must reverse the Secretary "irrespective of the volume of evidence supporting the factual findings." *Schmoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir.1980).

### Repayment of Overpayments

The Secretary has provided an exception for repayment of overpayments under 42 U.S.C. § 404(b) which provides:

In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience.

The "defeat the purpose" language of 42 U.S.C. § 404(b) is defined and elaborated upon in 20 C.F.R. § 404.508(b) as follows:

Adjustment or recovery will defeat the purposes of title II in (but is not limited

to) situations where the person from whom recovery is sought needs substantially all of his current income (including social security monthly benefits) to meet current ordinary and necessary living expenses.

Finally, 20 C.F.R. § 404.508(a) describes "ordinary and necessary living expenses" as:

(1) Fixed living expenses, such as food and clothing, rent, mortgage payments, utilities, maintenance, insurance (*e.g.*, life, accident, and health insurance including premiums for supplementary medical insurance benefits under title XVIII), taxes, installment payments, etc.;

(2) Medical, hospitalization, and other similar expenses;

(3) Expenses for the support of others for whom the individual is legally responsible; and

(4) Other miscellaneous expenses which may reasonably be considered as part of the individual's standard of living.

To properly determine whether repayment would violate the purpose of the Act, the district court must consider the claimant's entire financial position. *E.g., Milton v. Harris*, 616 F.2d 968, 974 (7th Cir.1980) (citations omitted).

*ALJ's Computation of Teamer's Monthly Income*

■ The ALJ's computation of Teamer's monthly income, specifically the addition of a $90.00 per month union supplement, is not supported by substantial evidence. At the administrative hearing, Teamer testified to receiving two union supplement checks in the $200.00 to $300.00 range, as well as a third union supplement check for $17.00. While presenting this testimony, Teamer engaged in the following colloquy with the ALJ regarding her union supplement checks:

Q. Now there was a union supplement to that—that union supplement still coming in?

A. No, I only got two checks of the union supplement and I did report it.

Q. Okay, and how much were those checks for?

A. One was $290.00 I think, I'm not really sure, but I think it was around $200 and something. Both of them was in the $200—pretty close to $300.00.

Q. Okay. Somewhere around $290.000, [sic] but there were only two of those checks, right?

A. Yes, and the last one I got was $17.00.

Q. From the union $17.00?

A. Right.

Q. When did you receive the last check from the union, about?

A. Okay, six months after you are off from work, the union doesn't pay you anything. You're out of the union and they don't pay you anything, but I don't really remember.

Q. OKay. [sic]

A. But I do know six months after you don't get anything—

Q. Okay, so the only thing you're getting in your name is $312.00 every two weeks?

A. Yes.

Q. Okay.

(A.R. 33–34) On July 26, 1984, Teamer reported that she received two checks from the union for $266.00 and $291.00 on November 7, 1983 and January 23, 1984, respectively.

The Secretary alleges that its August 1, 1984 report of a personal conference with Teamer held on July 12, 1984 contradicts Teamer's assertions with respect to the union supplements. There, the Secretary, not Teamer, approximated that Teamer received $90.00 per month in union supplements. (A.R. 62–64) The record does not disclose how the Secretary came to that approximation, or even whether Teamer agreed that it was correct. Furthermore, in its report, the Secretary relied on Teamer's previously mentioned written account of the two union checks. The updated Overpayment Recovery Questionnaire submitted by Teamer and relied on by the Secretary does not list a $90.00 per month union supplement. Rather, Teamer sub-

mitted that she received the two union checks and noted that the total amount received was $557.00. (See A.R. 57–59) In sum, based on the record as a whole, the relevant evidence does not reasonably support the ALJ's conclusion that Teamer continued to receive a $90.00 per month union supplement.[1] Therefore, the Teamers' monthly income was $1,869.00 per month, not $1,959.00 per month as indicated in the ALJ's findings.

### ALJ's Computation of Teamer's Monthly Expenses

■ The ALJ found that the Teamers' monthly expenses were $1,726.00 based upon a list of monthly expenses submitted on December 14, 1984. The ALJ rejected a list of monthly expenses totaling $1,868.60 submitted on January 28, 1985 because that list "appear[ed] to inflate some of the expenses and [was] unsigned by the claimant." (A.R. 8) Authority to weigh the evidence lies within the province of the ALJ, not the courts. The ALJ's articulation for giving the December 14, 1984 expense list more weight is reasonable under the circumstances and constitutes substantial evidence in support of the ALJ's finding that Teamer's monthly expenses were $1,726.00 per month.

■ With respect to dental expenses, the ALJ stated the following: "[C]ertain items ..., such as dental bills for her son, are probably not paid out of [Teamer's] personal income." (A.R. 10) However, Teamer testified that she paid a portion of her son's dental bill and that medical insurance failed to cover medical expenses unless her son went into the hospital. Also, Teamer presented a receipt showing payment of $100.00 on a dental bill with a remaining balance of $305.00. The ALJ did not expressly subtract any dental expenses from Teamer's account of monthly expenses before he determined that Teamer could repay the overpayment. Instead, the ALJ apparently made the statement regarding dental bills to bolster his previous determi-

nation that Teamer could repay the overpayment based on expenses of $1726.00 per month. Accordingly, the ALJ's statement carries no impact upon this court's analysis.

### Defeat the Purposes of the Act

■ Section 404(b) of the Act is mandatory; the Secretary must waive recoupment if Teamer meets the Act's requirements. *Califano v. Yamasaki,* 442 U.S. 682, 693–94, n. 9, 99 S.Ct. 2545, 2554, n. 9, 61 L.Ed.2d 176 (1979); *Gavin v. Bowen,* 635 F.Supp. 1251, 1252 (N.D.Ill.1986). If Teamer needs substantially all of her income and benefits to meet ordinary and necessary living expenses, waiver of the repayment should be granted. 20 C.F.R. §§ 404.508(b), 416.553(a). Teamer is not required to prove that "every dollar of income is required for living expenses...." *Hansen v. Harris,* 507 F.Supp. 900, 903 (W.D.Ark.1981). Nor is Teamer required to show that she has no savings or other assets. *Id.* Rather, Teamer need only establish that *substantially all* of her family's income is needed to meet necessary expenses as they become due. *Id.* Finally, the Social Security Administration has indicated that recovery of an overpayment would pose a hardship if the refund would deplete a claimant's resources below $5,000.00. (Social Security Ruling 83–3a).

This court has no doubt that the Teamers need substantially all of their income to meet their ordinary and necessary living expenses. If Teamer's income totals $1,869.00 per month with monthly expenses of $1,726.00, then Teamer retains $143.00 surplus per month. Moreover, the Teamers have savings approximating only $200.00. The "substantially all" language of the Act does not dictate that simply because the Teamers have a monthly surplus and nominal savings, they should be required to repay an overpayment of $11,324.40 and place themselves in a precarious financial position, unable to cope with unforeseen expenses or emergencies. Indeed,

---

1. Nor does Teamer's testimony with respect to her last check for $17.00 change this court's analysis. The ALJ did not base his determination on a finding that Teamer's testimony was

inconsistent or lacked credibility. *See generally Zblewski v. Schweiker,* 732 F.2d 75 (7th Cir. 1984).

other courts based on similar facts have held likewise. *See e.g., Hansen v. Harris,* 507 F.Supp. 900 (W.D.Ark.1981) (recoupment ordered waived where claimant retained nominal monthly income, held partial interest in a home valued at approximately $10,000 and accumulated $1,500.00 in savings); *Coker v. Harris,* 508 F.Supp. 996 (M.D.Ga.1981) (waiver of $2,181.00 granted despite savings of over $5000.00, where the account was designated a burial fund and the court held that the elderly recipient's wishes should be respected); *Frasier v. Harris,* 495 F.Supp. 260 (D.Colo.1980) (waiver of $2,648.40 granted despite existence of savings account where recovery would have caused the recipient to deplete her savings for ordinary expenses and leave nothing for emergencies); *Kirk v. Mathews,* 428 F.Supp. 564 (D.Mass.1977) (family of eight on welfare); *Waldron v. Finch,* 307 F.Supp. 1384 (S.D.W.Va.1970) (family income $168.00 per month and no assets); *Woods v. Gardner,* 286 F.Supp. 648 (W.D.Pa.1968) (waiver granted to a domestic, despite a small income and free room and board, because she was 68 years old, in uncertain health, and her continued employment was doubtful); *see generally Gavin v. Heckler,* 620 F.Supp. 999 (N.D.Ill. 1985). Additionally, in cases where recoupment has been upheld, claimants typically had substantial liquid assets. *See e.g., Milton v. Harris,* 616 F.2d 968, 973–974 (7th Cir.1980) (denial of waiver of $5,034.60 overpayment upheld where claimant "had savings of over $40,000 and $17,000 worth of equity in Tennessee real estate ... received $3,500 per year in interest income from her savings, and ... had begun to operate a business that was meant to show a profit in six months")[2]; Social Security Ruling 83–3a (denial of waiver of $4,829.70 overpayment upheld where claimant had savings of almost $20,000.00 as well as $12,000.00 equity in real property). Moreover, given the Teamers' fixed income and the inflationary trends of the economy, recoupment would defeat the purposes of the Act even assuming, *arguendo,* Teamer received $90.00 per month in union supplements and incurred no liability for dental bills.[3] Accordingly, based on interpretation of case law defining the "substantially all" standard inherent in § 404(b) of the Act, this court finds that the ALJ erred as a matter of law when he denied Teamer a waiver of recoupment.[4]

## CONCLUSION

Based on the foregoing, the plaintiff's Motion for Summary Judgment is GRANTED and the Secretary's Motion for Summary Affirmance is DENIED. The Secretary's final decision that recoupment of the overpayment of benefits would not defeat the purposes of title II of the Social Security Act is REVERSED, and the case is REMANDED to the Secretary with directions to waive recoupment.

2. Teamer's financial situation is remarkably different than that of the plaintiff in *Milton.* First, Teamer's savings of $200.00 pales in comparison to the $40,000.00 savings of the plaintiff in *Milton.* In fact, the plaintiff in *Milton* derived substantially more in interest income from her savings account per year than the Teamers possess in principal in their account. Secondly, the Teamers' income is fixed since their entire income is derived from benefits, while the plaintiff in *Milton* had independent sources of income.

3. In Teamer's response to the Secretary's Motion for Summary Affirmance, she briefly argues that she changed her position for the worse in reliance on the overpayment, and that recovery therefore would be against equity and good conscience. Teamer asserts that, at a minimum, remand is necessary with respect to this issue. Indeed, while the ALJ stated that recovery would not be against equity and good conscience, he failed to articulate a factual basis for this determination. However, this issue need not be reached at this time due to the court's determination that recovery of the overpayment would defeat the purposes of the Act.

4. The court in *Hansen v. Harris, supra,* similarly found that recoupment would defeat the purposes of the Act, but based its finding on a factual analysis and the "substantial evidence" standard of review. In its opinion, the *Hansen* court articulated its interpretation of the "substantially all" standard of the Act, providing the legal precedent upon which this court now relies. Thus, this court's ruling is determined as a matter of law. Even viewed as a factual matter, however, the ALJ's "determination that the purposes of the Act would not be defeated is not supported by substantial evidence." *Hansen,* 507 F.Supp. at 902.